IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ARISTA RECORDS LLC., et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 7:08cv00205 |
| ) | |
| v. ) | |
| ) | |
| DOES 1-14, ) By: | Hon. Michael F. Urbanski |
| ) | United States Magistrate Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the court on two discovery motions: (1) Plaintiffs' Motion to Compel Virginia Polytechnic Institute [& State University] ("Virginia Tech") to Comply with Plaintiffs' Subpoena (Dkt. No. 15); and (2) Virginia [Tech's] Motion to Quash Plaintiffs' Motion to Compel (Dkt. No. 16). The issues have been briefed and the court has heard argument, making the matters ripe for decision. For the reasons stated below, the court finds that both Plaintiffs' motion and Virginia Tech's motion must be **DENIED**.

### I.

Plaintiffs originally filed this copyright infringement action against 14 "Doe" Defendants, all alleged to have illegally disseminated over the Internet copyrighted works owned and/or controlled by the Plaintiff music and entertainment businesses. (Complaint, ¶¶ 3-16). At the time of suit, each Doe Defendant was only identified by the Internet Protocol ("IP") address provided by a common Internet Service Provider ("ISP").[1] (Id., ¶¶ 17-18).

---

[1] "An IP address is a string of up to twelve digits, such as '202.134.34.9.' The IP address provides the basic routing information a user needs to contact and access a particular computer on the Internet, along with the website or other information stored thereon." Peterson v. Nat'l Telcoms. & Info. Admin., 478 F.3d 626, 629 (4th Cir. 2007).

On February 27, 2008, Plaintiffs' filed under seal an ex parte motion for leave to take immediate discovery against the common non-party ISP (Virginia Tech), in order to determine the true identities of the Doe Defendants. The district court granted the motion, and in a sealed order on March 4, 2008 authorized Plaintiffs to:

> serve immediate discovery on [Virginia Tech] to obtain the identity of each Doe defendant by serving a subpoena pursuant to Federal Rule of Civil Procedure 45 that seeks documents that identify each Doe defendant, including the name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control[2] addresses for each defendant. Such a subpoena may also seek all documents and electronically-stored information related to the assignment of any IP address which Virginia Tech cannot link to a specific Doe defendant.

(Sealed Discovery Order, Dkt. No. 6, ¶ 1).[3]

Plaintiffs issued a Rule 45 subpoena to Virginia Tech on March 28, 2008 ("Subpoena"),[4] which commanded Virginia Tech to provide:

> Information, including name, current and permanent addresses, telephone numbers, e-mail addresses, and [MAC] addresses, sufficient to identify the alleged infringers of copyrighted sound recordings, listed by IP address in Attachment A to this Subpoena. In the event that Virginia Tech cannot link the IP address to a specific individual, provide all documents and electronically-stored information relating to the assignment of the IP address.

---

[2] A Media Access Control ("MAC") address is associated with a particular piece of computer hardware.

[3] Additional provisions of this order: (1) required Virginia Tech to give written notice to relevant subscribers after being served with a subpoena; (2) specified that any motion to quash a subpoena must be made prior to its return date; (3) required Virginia Tech to preserve the subpoenaed information pending resolution of any timely filed motion to quash; (4) directed that any information disclosed to Plaintiffs was to be used for the sole purpose of protecting Plaintiffs' copyrights as set forth in the Complaint; and (5) required that Plaintiffs provide a copy of their ex parte motion and the order itself to Virginia Tech, along with any subpoena. (Sealed Discovery Order, ¶¶ 3-6).

[4] By this date, Plaintiffs had settled their claims with three Defendants (Does 6, 12, and 13), and therefore were only seeking identifying information related to 11 IP addresses.

2

(Subpoena, Ex. 1 to Motion to Compel). Virginia Tech responded on April 28, 2008, but did not provide identifying information for four of the IP addresses in question,[5] stating that "Virginia Tech cannot identify with specificity Does 2, 3, 4, or 14 based upon the IP address[es] provided by your client." (Subpoena Response, Ex. 3 to Motion to Compel).

Plaintiffs then issued an additional Rule 45 subpoena to Virginia Tech on July 16, 2008 ("Revised Subpoena"), relating solely to Does 2, 3, 4, and 14, which commanded Virginia Tech to do the following:

> For each of the IP addresses listed in Attachment A to this Subpoena, and at the listed dates and times, provide the corresponding name(s), current and permanent addresses, telephone numbers, e-mail addresses, and [MAC] addresses. In the event that the IP address is linked to multiple individuals, provide all documents and electronically-stored information relating to the assignment of the IP address at the dates and times provided.

(Revised Subpoena, Ex. 2 to Motion to Compel). On August 8, 2008, Virginia Tech responded by "enclos[ing] the Network Session File Logs related to the IP addresses" listed in the Revised Subpoena. (Revised Subpoena Response, Ex. 4 to Motion to Compel). The file logs identify the dormitory room associated with the four IP addresses in question, along with the specific MAC addresses of the devices used to access the Internet at the relevant times. (Id.). Virginia Tech did not provide any names or other personally identifying information for these Does, again stating that "Virginia Tech cannot identify with specificity Does 2, 3, 4, or 14 based upon the IP addresses provided by your client." (Id.).

---

[5] For six of the seven other Does, Virginia Tech provided the requested identifying information. (Subpoena Response, Ex. 3 to Motion to Compel). Virginia Tech withheld the identity of Doe 5 pursuant to the March 4, 2008 discovery order, as Doe 5 had filed a Motion to Quash. All seven of these Does have since been dismissed from this case, pursuant to Plaintiffs' motions. (See Dkt. Nos. 9, 11).

3

After the parties were unable to resolve this dispute, Plaintiffs filed their Motion to Compel on October 15, 2008, "request[ing] an Order compelling Virginia Tech to produce names, current (and permanent) addresses, telephone numbers and e-mail addresses for the individuals residing in the rooms to which the following IP addresses were assigned:

> 198.82.118.137 2007-11-14 15:10:53 EST
> 198.82.118.155 2007-10-30 20:01:23 EDT
> 198.82.118.94 2007-11-27 12:33:44 EST
> 198.82.94.124 2007-11-26 16:32:23 EST"

(Motion to Compel at 1). Plaintiffs argue that they are entitled to this identifying information because it is: (1) relevant under Federal Rule of Civil Procedure 26(b)(1); (2) explicitly authorized by Judge Conrad's March 4, 2008 discovery order; and (3) properly requested by Plaintiffs' two subpoenas. On October 23, 2008, Virginia Tech filed its Motion to Quash, claiming for the first time that state sovereign immunity, as expressed in the Eleventh Amendment to the United States Constitution, strips the court from subject matter jurisdiction to require Virginia Tech to provide any information to private civil litigants.[6] Plaintiffs filed an opposition brief to the Motion to Quash on November 10, 2008, arguing that: (1) the Eleventh Amendment is inapplicable when the state entity is not a party; (2) even if sovereign immunity applied, Virginia Tech had waived that defense through its two partial subpoena responses; and (3) Virginia Tech's motion did not comply with the requirements for a valid motion to quash a Rule 45 subpoena. The court held a hearing on December 3, 2008, at which the parties argued

---

[6] With good reason, Virginia Tech does not raise any claim that the Family Educational and Privacy Rights Act ("FERPA") 20 U.S.C. § 1232g prevents it from producing the requested information. By requiring notice to student subscribers after Virginia Tech is served with a subpoena, Judge Conrad's discovery order (see supra note 3) complies with FERPA. 20 U.S.C. § 1232g(b)(2) ("personably identifiable information in education records" may be disclosed "pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency"); § 1232g(d) (consent only required of the student if attending a post-secondary institution).

4

their positions and Virginia Tech hand-delivered a substantive response to Plaintiffs' Motion to Compel (without waiving its Eleventh Amendment arguments). In this brief, Virginia Tech argued that it "does not have any additional information responsive to Plaintiffs' subpoena[s]," attaching a sworn affidavit from Earving Blythe, Virginia Tech's Vice-President of Information Technology and Chief Information Officer, regarding its computer and communications systems and infrastructure. (Virginia Tech's Responsive Pleading at 4 & Ex. 2, Dkt. No. 25).[7]

## II.

The sovereign immunity of states in federal court proceedings is based upon the Eleventh Amendment, which reads: "The Judicial power of the United States shall not be construed to extend to <u>any suit</u> in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI (emphasis added).[8] The predominant purpose of the Eleventh Amendment is to prevent

---

[7] At the hearing, the court also gave Plaintiffs and Virginia Tech one week to submit any additional argument and/or authority. On December 10, 2008, Plaintiffs filed a number of orders from other jurisdictions pertaining to issues before the court. (<u>See</u> Dkt. No. 27).

[8] As illustrated above, the text of the Eleventh Amendment does not make explicit reference to suits filed against a state in <u>state</u> court. In <u>Alden v. Maine</u>, 527 U.S. 706 (1999), the Supreme held that sovereign immunity shielded the State of Maine from suit in just such a circumstance. In so doing, the Supreme Court described its past references to "Eleventh Amendment immunity" as a:

> convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution.

<u>Alden</u>, 527 U.S. at 713. Employing <u>Alden's</u> formulation of state sovereign immunity to an action (such as the instant case) filed in <u>federal</u> court would not alter the court's decision, as in <u>Alden</u>, Maine was the named defendant in a lawsuit, not a non-party. <u>See id.</u> at 712 ("We <u>hold</u> that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private <u>suits</u> for damages in state courts.") (emphasis added). However, framing Virginia Tech's claim as one of "Eleventh Amendment" immunity continues to be proper after <u>Alden</u>. <u>See</u> <u>Stewart v. North Carolina</u>, 393 F.3d 484, 487-88 (4th Cir. 2005) ("distinguish[ing] the related but not identical concepts of Eleventh Amendment immunity and state sovereign immunity," and concluding that the latter is "'based on the logical and practical ground that there can be no legal

5

federal court judgments against a state. See Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994) ("[T]he vulnerability of the State's purse [is] the most salient factor in Eleventh Amendment determinations."); Regents of Univ. of Calif. v. Doe, 519 U.S. 425, 431 (1997) ("The Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party.").

The court will assume, but not decide, that Virginia Tech is an arm of the state for Eleventh Amendment purposes. See Md. Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 261 (4th Cir. 2005) (describing the four-factor inquiry used "to determine whether a governmental entity is an 'arm of the state' under the Eleventh Amendment"). Thus, the issue before the court is whether state sovereign immunity shields a non-party state entity from having to respond to a lawfully issued Rule 45 subpoena. Due to an absence of authority in support of Virginia Tech's position, as well as the text and purpose of the Eleventh Amendment, the court finds that the doctrine of sovereign immunity is inapplicable to Plaintiffs' subpoena requests.[9]

---

right as against the authority that makes the law on which the right depends,'" while "Eleventh Amendment immunity is but an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states") (emphasis added) (citations omitted); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474 (4th Cir. 2005) (evaluating state entity defendants' claim of "Eleventh Amendment immunity" post-Alden).

[9] Both Plaintiffs and Virginia Tech submit argument as to whether the United States Congress has validly abrogated states' sovereign immunity in federal copyright actions. (See Pls.' Resp. in Opp. to Motion to Quash at 5; Mktg. Info. Masters, Inc. v. Bd. of Trs. of the Cal. Stat. Univ. Sys., 552 F. Supp. 2d 1088 (S.D. Cal. 2008) (case law provided by Virginia Tech at December 3, 2008 hearing)). The court does not decide this issue, finding as a first principle that the concept of sovereign immunity does not apply where the state entity is a non-party, irrespective of whether Congress has abrogated state sovereign immunity in certain types of federal lawsuits.

Virginia Tech relies solely upon Univ. of Texas at Austin v. Vratil, 96 F.3d 1338, 1340 (10th Cir. 1996),[10] for the proposition that "that state colleges and universities are entitled to Eleventh Amendment immunity from being treated as parties for discovery purposes." (Motion to Quash at 3). While that statement of law may be correct, Virginia Tech is not treated as a party by the issuance of a Rule 45 subpoena, a fact noted in Vratil itself.[11] There, a group of NCAA Division I state colleges and universities sought relief from a district court order "referring to them as 'real parties of interest' and requiring them to respond to plaintiffs' interrogatories." Vratil, 96 F.3d at 1339. The NCAA–a voluntary unincorporated association of its member colleges and universities–was the named defendant. After the NCAA failed to comply with an order to respond to Federal Rule of Civil Procedure 33(a) interrogatories, the district court found that the member institutions were the "real parties in interest" and ordered each to respond directly to respond to the interrogatories propounded to the NCAA. Id. The Tenth Circuit reversed, holding that "Eleventh Amendment immunity entitles a state not only to protection from liability, but also from suit, including the burden of discovery, as a party, within

---

[10] Outside of Vratil, Virginia Tech cites Virginia state court cases regarding the general purposes of sovereign immunity, and includes a footnote that nakedly claims that the doctrine of sovereign immunity was expanded in Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996) such that "federal courts since that time have followed the general rule that abrogation of sovereign immunity occurs only in narrowly limited circumstances." (Motion to Quash at 3-4 & n. 2). And as discussed supra note 9, Virginia Tech also provided Mktg. Info. Masters, Inc. at the hearing which pertains to whether Congress abrogated states' sovereign immunity in copyright actions.

[11] In fact, discovery is routinely permitted against non-party state colleges and universities in similar copyright infringement actions, despite challenges (though none apparently raising sovereign immunity) by the educational institution or Doe defendants. See, e.g., Arista Records LLC v. Does 1-27, CV-07-162-B-W; CV-08-028-B-W (D. Me. Oct. 29, 2008) (discovery against the University of Maine) (Ex. 3 to Dkt. No. 27); Zomba Recording LLC v. Does 1-15, Civ. No. 08-31-HRW (E.D. Ky. Jun. 2, 2008) (discovery against Morehead State University) (Ex. 4 to Dkt. No. 27); Arista Records, LLC v. Does 1-17, Civ. No. 07-6197-HO, (D. Or. Sep. 25, 2008) (leave to serve a second subpoena against the University of Oregon) (Ex. 6 to Dkt. No. 27); Arista Records LLC v. Does 1-11, CIV-07-568-R (W.D. Ok. Nov. 11, 2007) (discovery against Oklahoma State University) (Ex. 7 to Dkt. No. 27); Sony BMG Music Entertainment v. John Doe, 5:08-CV-109-H (E.D.N.C. Oct. 21, 2008) (discovery against North Carolina State University) (Ex. 9 to Dkt. No. 27).

the suit." Id. at 1340 (emphasis added). As the Tenth Circuit stated, interrogatories "may only be directed to a party to an action" which the member NCAA institutions were not. Id. Further, the Vratil decision explicitly distinguished its facts from Laxalt v. McClatchy, 109 F.R.D. 632 (D. Nev. 1986), as there "discovery was sought under Fed. R. Civ. P. 45, which, in contrast to Fed. R. Civ. P. 33, specifically provides a procedure applicable to nonparties." Id. (emphasis added). In sum, Vratil not only fails to support Virginia Tech's position in its Motion to Quash, but in fact cuts against it.

On the other hand, Plaintiffs cite a number of cases, including Laxalt, where courts have found that Eleventh Amendment sovereign immunity does not protect non-party state entities from responding to discovery requests. The Eighth Circuit upheld a district court's order that denied a non-party state entity's motion to quash a subpoena, holding that "[t]here is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." In re Missouri Dep't of Natural Resources, 105 F.3d 434, 436 (8th Cir. 1997). Similarly, the Seventh Circuit recently observed that "[t]he writ sought in this case would[,] if granted[,] be like an order commanding a state official who is not a party to a case between private persons to produce documents in the state's possession during the discovery phase of the case; such orders, because they do not compromise state sovereignty to a significant degree do not violate the Eleventh Amendment." Barnes v. Black, 544 F.3d 807, 812 (7th Cir. 2008).

Plaintiffs also argue that district courts faced with this issue have found that the Eleventh Amendment does not apply. In Laxalt, the court affirmed a magistrate judge's denial of the Nevada State Gaming Control Board's motion to dismiss a discovery subpoena and notice of

8

deposition directed to it, a non-party. 109 F.R.D. at 633, 635. In so doing, the court rejected the Nevada Board's argument that the Eleventh Amendment immunized it from federal court discovery demands. Id. at 633-35. A recent decision from California reached the same conclusion. Allen v. Woodford, 544 F. Supp. 2d 1074 (E.D. Cal. 2008). After reviewing Supreme Court precedent, the Allen court concluded that a discovery request where the state entity is not sued is not "a suit" under the Eleventh Amendment. Id. at 1078-79. Thus, the Eleventh Amendment did not preclude the requested discovery as:

> [n]either the State, nor any of its employees to whom subpoenas have been directed to obtain the information sought, that have been found essential to the prosecution of the Plaintiff's case, are parties, nor has any relief in law or equity been sought against them or the State. No judgment will be issued in this action against the State that could have any conceivable effect on the State treasury; the State custodians are only subpoenaed to produce documents for use in the prosecution of this federal civil rights action. The Non-Parties' assertion that they must comply with the subpoenas in their official capacities as custodians of record is irrelevant; no judgment or other relief of any kind is sought against them in this litigation.

Id. at 1079.

In addition, the Allen decision persuasively rejected argument and case law to the contrary. A magistrate judge from the Eastern District of California had previously found that "absent a waiver from the State, the Eleventh Amendment bars enforcement of the [non-party] subpoenas." Id. at 1075 (citing Estate of Gonzalez v. Hickman, 466 F. Supp. 2d 1226 (E.D. Cal. 2006)). The Allen court reasoned that:

> [t]o apply Estate of Gonzalez would mean that a plaintiff who sues a state official in his individual capacity, a [42 U.S.C. § 1983] lawsuit specifically authorized by the United States Supreme Court, will never be able to prove his or her case, if any required proof is in the hands of the State's custodian of records. Such a result is ludicrous.

9

> This is evident from the Eleventh Amendment's express language, "any suit in law or equity, commenced or prosecuted against one of the United States" as it has been interpreted by the United States Supreme Court. This analysis shows that Estate of Gonzalez cannot be the law and Laxalt v. C.K. McClatchy is correctly decided.

Id. at 1079. The court likewise believes that Laxalt and Allen are correctly decided, complying with both the text and purpose of the Eleventh Amendment.[12]

Within the Fourth Circuit, this appears to be a case of first impression. The court does note that the Fourth Circuit has found (as a threshold matter) that sovereign immunity applies to discovery requests made of non-party federal agencies. COMSAT Corp. v. Nat'l Sci. Found., 190 F.3d 269, 277 (4th Cir. 1999) ("[I]t is sovereign immunity . . . that gives rise to the Government's power to refuse compliance with a subpoena.").[13] However, the court finds that the instant case is distinguishable because the claim for sovereign immunity is asserted by a state, rather than a federal, entity. Support for the court's decision is found in Jackson v. AFSCME Local 196, Civ. No. 3:07CV0471, 2008 U.S. Dist. LEXIS 34092 (D. Conn. Apr. 25, 2008), which presents a highly analogous situation. In Jackson, the magistrate judge granted (in part) plaintiff's motion to compel a subpoena response by a non-party state agency official, finding

---

[12] Allen also distinguished itself from United States v. James, 980 F.2d 1314 (9th Cir. 1992), where the Ninth Circuit upheld the quashing of a subpoena issued by a criminal defendant to the Quinault Indian Nation for documents related to a rape victim's alleged alcohol and drug problems, because James did not involve a claim of Eleventh Amendment immunity. 544 F. Supp. 2d at 1079.

[13] Because the Fourth Circuit also found that the Administrative Procedure Act ("APA") waived the sovereign immunity of an agency such as the National Science Foundation ("NSF") when the claim was not for money damages, its review in COMSAT focused upon whether the non-party NSF had abused its agency discretion and "refused production in an arbitrary, capricious, or otherwise unlawful manner." 190 F.3d at 277 (citation omitted); see also id. at 274. The Fourth Circuit also noted that its decision did not call into the question the "important principle" that the "'public . . . has a right to everyman's evidence,'" as "private litigants who are dissatisfied with an agency's response to a third-party subpoena . . . may still obtain federal court review under the APA." Id. at 278 (citation omitted).

10

that the Eleventh Amendment did not apply. 2008 U.S. Dist. LEXIS 34092, at *1, *4-7. This was despite the state official's argument that because the Second Circuit had held in Environmental Protection Agency v. General Electric Co., 197 F.3d 592 (2d Cir. 1999), that a federal agency did not have to "respon[d] to a subpoena in an action to which the federal government is not a party" absent "an express waiver of sovereign immunity," the same principle should govern for state agencies. Id. at *6-7. The Jackson court disagreed, finding that because the official was the director of "a state agency not a federal governmental agency, Environmental Protection Agency v. General Electric Co. [was] not controlling." Id. at *7. Similarly, the court finds that because COMSAT involved the sovereign immunity of a federal agency,[14] rather than a state entity pursuant to the Eleventh Amendment, it does not control the instant case.

For the above reasons, the court finds that the Eleventh Amendment does not apply to the subpoenas at issue, and denies Virginia Tech's Motion to Quash.[15]

### III.

The next question concerns whether Virginia Tech has complied with the terms of the Subpoena and Revised Subpoena.[16]

The operative language of the Subpoena consists of two sentences. First, the Subpoena requests "[i]nformation, including name, current and permanent addresses, telephone numbers, e-

---

[14] Federal sovereign immunity does not derive from any text in the Constitution, though it has been stated to be "embodied in the Constitution." Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 580 (1946) (Frankfurter, J., dissenting).

[15] Because the court finds that sovereign immunity does not shield Virginia Tech from responding to Plaintiffs' Rule 45 subpoenas, it does not address Plaintiffs' other arguments concerning waiver and the form/timeliness of Virginia Tech's Motion to Quash.

[16] Plaintiffs' counsel asserted at the December 3, 2008 hearing that the Subpoena was not withdrawn after the Revised Subpoena was issued. Therefore, the court will evaluate whether Virginia Tech has complied with the terms of both subpoenas.

11

mail addresses, and [MAC] addresses, sufficient to identify the alleged infringers of copyrighted sound recordings, listed by IP address in Attachment A to this Subpoena." (Subpoena). Virginia Tech asserts, and Plaintiffs do not dispute, that it cannot identify Does 2, 3, 4, or 14 based on the IP addresses provided, as multiple individuals resided in the rooms associated with the IP addresses at the relevant times. (Subpoena Response; Revised Subpoena Response; Motion to Compel at 2-4). Therefore, there is no single "name" (or other identifying information associated with that name) that Virginia Tech can provide for those four IP addresses. Because the four IP addresses in question are associated with a data outlet in a dormitory room, as opposed to an individual, there is no way for Virginia Tech to provide what the subpoena commands, i.e., "[i]nformation . . . sufficient to identify the alleged infringers."

The second sentence of the Subpoena commands that when Virginia Tech cannot link an IP address to a specific individual, then it must "provide all documents and electronically-stored information relating to the assignment of the IP address." (Subpoena). Through the sworn affidavit of Mr. Blythe, Virginia Tech states that "[w]ithin residence halls at Virginia Tech, the PID (unique personal identifier) and/or name of a student are <u>not associated</u> with the assignment of an IP address for a wired connection." (Blythe Affidavit, ¶ 10 (emphasis added)). The network session file logs produced on August 8, 2008 indicate that the IP addresses were associated with particular outlets for rooms within Virginia Tech residence halls. (Revised Subpoena Response; see also Blythe Affidavit ¶ 10 ("The log information, which we have previously submitted to you, provides IP-MAC mappings and MAC-building/room/jack

mappings."[17])). Virginia Tech asserts that when it produced the network session file logs, it produced all the information in its possession "relating to the assignment" of the four IP addresses in question, and thereby complied with the terms of the Subpoena.

The court agrees. The Subpoena is limited to its terms. Plaintiffs only ask for information "relating to the assignment of the IP address," and Virginia Tech has provided this information. The IP addresses in question are not assigned to a person, rather they are assigned to a physical data port in a specific dormitory room. Virginia Tech has provided what information it has concerning the assignment of the IP addresses.

The analysis is the same as regards to Plaintiffs' Revised Subpoena, which first seeks names "corresponding" to the IP addresses in question. Again, because these addresses do not correspond to any person, Virginia Tech cannot produce what it does not have. Likewise, the second sentence states "[i]n the event that the IP address is linked to multiple individuals," Virginia Tech shall produce "all documents and electronically-stored information relating to the assignment of the IP address." Again, it is uncontroverted that the IP addresses in question are assigned to rooms, and not to one or multiple individuals. Virginia Tech has thus provided all of the information it has concerning what the Subpoena and Revised Subpoena request.

---

[17] The affidavit also states that "Virginia Tech does not require students to register their [MAC] addresses to use wired connections in residence halls. Thus, [Virginia Tech does] not have information to assert that a particular student used a specific IP address at the dates and times specified." (Blythe Affidavit ¶ 11).

13

## IV.

For the stated reasons, it is hereby **ORDERED** that Virginia Tech's Motion to Quash (Dkt. No. 16) is **DENIED**, and that Plaintiffs' Motion to Compel (Dkt. No. 15) is **DENIED**.

To be sure, this reading of the text of the subpoenas leaves Plaintiffs short of the information needed to pursue this action as regards these four IP addresses. As such, and pursuant to the March 4, 2008 discovery order which authorized "discovery to obtain the identity of each Doe defendant" (Sealed Discovery Order, ¶ 1), Plaintiffs are permitted to serve a third subpoena on Virginia Tech seeking identifying information of students living in the dormitory rooms assigned the IP addresses on the dates and times in question. Such subpoena shall not be returnable until at least February 1, 2009 or thirty (30) days after its issuance, whichever is later. Also pursuant to the March 4, 2008 discovery order, upon service of any such subpoena, Virginia Tech is directed to provide a copy of the subpoena to the students residing in the rooms associated with the subject IP addresses, along with a notice that any motions to quash asserted by Virginia Tech or a student individually must be filed at least one day prior to the subpoena's return date.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to Plaintiffs' counsel of record and to Virginia Tech's counsel.

Enter this 22nd day of December, 2008.

Michael F. Urbanski
United States Magistrate Judge